THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRIOT RESOURCE PARTNERS II, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 06 C 5369 |
| | ) |
| v. | ) Magistrate Judge |
| | ) Arlander Keys |
| | ) |
| SERVICE DISABLED VETERANS BUSINESS | ) |
| ASSOCIATES, INC., ET AL | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patriot Resource Partners II, LLC (Patriot) is an Illinois corporation that provides capital and management services to business enterprises. Patriot filed the underlying action against Defendants Service Disabled Veterans Business Association, Inc. (SDVB), William Truitt (Truitt), and Consolidated Engineering Services, Inc. (CESI) in Illinois state court alleging breach of contract. Defendants SDVB and Truitt timely removed the case to federal court on the basis of diversity jurisdiction. Plaintiff subsequently amended its Complaint to add the Association for Service Disabled Veterans (ASDV) and John Lopez (Lopez) as defendants, as well as two additional counts. Before the Court is Defendant ASDV's and Defendant Lopez's motion to dismiss the Amended Complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). Alternatively, Defendants ASDV and Lopez

move to dismiss Counts II and III, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Court grants both Defendants' motion to dismiss for lack of personal jurisdiction. ASDV's and Lopez's motion to dismiss for failure to state a claim upon which relief can be granted is denied as moot.

**Factual Background**

The following summary of factual allegations is taken from Plaintiff's Amended Complaint and is deemed true for purposes of this motion. *See Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005).

Plaintiff enters into contractual agreements with business entities whereby it provides funding and management services. (Am. Compl. at 2.) On November 29, 2004, Patriot entered into such an agreement with SDVB.[1] SDVB, a "Delaware corporation organized to assist veterans disabled in the service of their country," sought from Plaintiff, "financial, administrative and

---

[1] Plaintiff asserts that the agreement dated November 29, 2004 (Pl.'s Ex. 2) is an updated version of the Management Agreement dated February, 20, 2002 (Pl.'s Ex. 1). However, the Court notes that, while Plaintiff is a party to the later agreement, it is not a party to the earlier one. Rather, the contracting party to the February 20, 2002, agreement is "Patriot Resource Partners, Inc." (Pl.'s Ex. 1.) Because this corporate entity is not named in the subsequent Management Agreement and is not a party to the litigation, Plaintiff's Exhibit 1 will not be considered by the Court in its discussion.

management consulting services . . . in connection with [SDVB's] business activities." The agreement, effective for an initial term of 15 years, was signed by Dan S. Kennison, President and CEO of Patriot, and John K. Lopez, in his capacity as Chairman of SDVB. (Pl.'s Ex. 2.) Plaintiff alleges that, as a result of the services it provided in connection with this agreement, SDVB was successful in obtaining a five year contract as prime contractor - providing janitorial and other maintenance services - for the United States Veterans Administration Headquarters in Washington, D.C. (Am. Compl. at 4.) It was agreed, Patriot asserts, that Defendant CESI would prepare SDVB's invoices and subsequently direct all accounts receivable resulting from this government contract into a bank account controlled by Patriot. (Am. Compl. at 4-5.) However, Plaintiff contends that on September 15, 2006, Defendant Truitt issued a letter to CESI instructing CESI to deposit SDVB's accounts receivable into an account controlled by SDVB and not allowing for transfer to Patriot, in direct violation of the parties' agreement. (Am. Compl. at 5.) Patriot further argues that it was expressly agreed in the Management Agreement and verbally by Defendant Lopez that Patriot would be appointed up to two positions on SDVB's Board of Directors. (Am. Compl. at 10.) However, Plaintiff maintains that Defendant Lopez failed to fulfill his agreement and Patriot was not appointed any positions. (Am. Compl. at 11.)

Plaintiff also entered into an agreement with Defendant ASDV, a Delaware corporation "acting as an advocate and lobbyist for the interest of service disabled veterans." (Am. Compl. at 7.) Patriot alleges that, on March 3, 2005, it provided funding to ASDV to assist ASDV in carrying out its objectives, with the understanding that ASDV would repay both principal and interest on the date that ASDV had "profits derived from contract(s) to pay [Patriot]." (Am. Compl. at 7, Pl.'s Ex. 6.) The Working Capital Note, evidencing the agreement, was signed by Defendant Lopez, Chairman of ASDV, and Dan Kennison, CEO of Patriot.[2]

---

[2] Patriot asserts that, at the time Defendant Lopez signed the Working Capital Note, he was Chairman of both ASDV and SDVB. (Am. Compl. at 8.) However, the document provided by Plaintiff indicates that Lopez signed the note in his capacity as Chairman of ASDV only. (Pl.'s Ex. 6.) While Patriot asserts that SDVB is an affiliate of ASDV and thus liable under the Working Capital Note, "[i]t is a well-established principle that a corporation is separate and distinct as a legal entity . . . from other corporations with which it may be affiliated." *Main Bank of Chicago v. Baker*, 427 N.E.2d 94, 101 (Ill. 1981). The use of common officers and directors, without more, will not result in liability of one corporation for the obligations of another. *Id.* (citing *Steven v. Roscoe Turner Aeronautical Corp.*, 324 F.2d 157, 161 (7th Cir. 1963). Further,
> before the separate corporate identity of one corporation will be disregarded and treated as the alter ego of another, it must be shown that it is so controlled and its affairs so conducted that it is a mere instrumentatility of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice.

*Id.* (citing *People ex rel. Scott v. Pintozzi*, 277 N.E.2d 844, 851-52 (Ill. 1971), *Dregne v. Five Cent Cab Co.*, 46 N.E.2d 386, 391 (Ill. 1943), *Superior Coal Co. v. Dept. of Finance*, 36 N.E.2d 354, 360 (Ill. 1941)). As Plaintiff failed to make the required showing or indeed, allege any facts showing that SDVB is the alter ego of

(Pl.'s Ex. 6.)  Further, Plaintiff contends that on the date of signing, SDVB was organized and acting in compliance with the National Institute for Severely Handicapped's (NISH) requirements for a Community Rehabilitation Program.  These requisites include, *inter alia*, that SDVB qualify as a not-for-profit entity, as defined by the tax code, and that it abide by the laws of Delaware requiring a board of directors chosen from the community to guide and direct the activities of SDVB in accordance with its stated objective of finding employment and other business opportunities for service disabled veterans.  (Am. Compl. at 8.)

However, Plaintiff asserts that not only has Defendant Lopez failed to maintain the corporate status of SDVB necessary for continued participation in the Community Rehabilitation Program but, Patriot asserts, Lopez, in addition to Defendants ASDV and Truitt, have also defaulted on a loan of $1,365,400.00, despite SDVB having obtained government contracts to provide services. (Am. Compl. at 7-9, 12.)  Despite notice of the default, Plaintiff alleges that Defendants have failed to cure it.  (Am. Compl. at 9.)

On June 30, 2006, Patriot again entered into an agreement with SDVB.  On this occasion, Patriot loaned SDVB $50,000.00,

---

ASDV, and given that SDVB was not a signatory to the Working Capital Note, the Court finds that SDVB is entitled to be treated as an independent corporation.

with a maturity date of September 29, 2006. The promissory note was subsequently amended and the loan amount increased to $65,000.00, on July 17, 2006. Both the original and amended promissory notes were signed by Truitt, SDVB's President. (Pl.'s Ex. 3.) On September 20, 2006, however, Plaintiff declared the promissory note to be in default as a result of a "change in collateral (Funds Transfer Policy) Section 4.3 and 4.7." Specifically, Plaintiff asserted that SDVB effected a change in funds processing, in violation of the parties' agreement. (Pl.'s Ex. 4.) Though Patriot informed Defendants SDVB and Truitt of the default and demanded that they comply with the provisions of the parties' agreement, Patriot alleges that SDVB and Truitt have refused. (Am. Compl. at 5-6.)

Finally, Plaintiff argues that Defendants Lopez and Truitt attempted to defraud Plaintiff by concealing, *inter alia*, the acquisition of the contract for services at the VA Headquarters; Defendants' failure to employ service disabled veterans; and their failure to take the necessary steps to maintain SDVB's not-for-profit status as required by the NISH. Additionally, Patriot contends that Defendant Lopez assured him that Defendants were actively pursuing other contracts when indeed they were not. All because, Plaintiff asserts, Defendants sought to avoid repaying the funds that Plaintiff had loaned them. (Am. Compl. at 11.)

On November 21, 2006, Defendant CESI's motion to dismiss was

granted; therefore, it was dismissed as a defendant to the litigation. [Docket #28]. On February 28, 2007, Defendant Truitt's motion to dismiss the Amended Complaint was granted and he was thereby dismissed from the pending action. [Docket #51].

## Standard of Review

In a motion to dismiss for lack of personal jurisdiction, made pursuant to Federal Rule of Civil Procedure 12(b)(2), Plaintiff bears the burden of establishing that the Court may properly exercise personal jurisdiction over Defendants. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). In determining whether the Court has personal jurisdiction over Defendants, the Court may receive and consider affidavits and other materials submitted by the parties. *See Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). If material facts are disputed, the Court must conduct an evidentiary hearing and Plaintiff must prove its assertion of personal jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Where, as here, the Court makes its determination of personal jurisdiction based solely on written submissions, Plaintiff "need only make out a prima facie case of personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)(quoting *Hyatt*, 302 F.3d at 713). In determining whether the prima facie standard has been met, the Court resolves any dispute regarding relevant facts, in favor of

7

Plaintiff. *Purdue*, 338 F.3d at 782 (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983).

A federal district court sitting in diversity may assert personal jurisdiction "only if a court of the state in which it sits would have such jurisdiction." *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995)(quoting *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1243 (7th Cir. 1990). An evaluation of whether an Illinois court would have jurisdiction over Defendants requires a two-part inquiry. *See Purdue*, 338 F.3d at 779. First, the Court must look to the law of Illinois. *See id*. The Illinois long-arm statute enumerates acts that allow a court to exercise personal jurisdiction over non-resident defendants. 735 ILL. COMP. STAT. ANN. 5/2-209 (2008). Next, the Court must consider whether the exercise of jurisdiction comports with the requirements of federal due process. *Purdue*, 338 F.3d at 779. Because the Illinois long-arm statute contains a "catch-all provision" that allows personal jurisdiction to the maximum extent permitted by the federal Constitution, 735 ILL. COMP. STAT. ANN. 5/2-209 (2008), the Seventh Circuit has held that only one due process analysis is required. *Hyatt*, 302 F.3d at 715.

The Due Process Clause of the Fourteenth Amendment provides limits on the situations in which a state court may assert personal jurisdiction over nonresidents – both individuals and corporations. *RAR*, 107 F.3d at 1277. Defendants must have

"certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). However, the meaning of the standard depends on whether the state is asserting "general" or "specific" jurisdiction. *Id.* A state asserts 'specific jurisdiction' over a defendant when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). In contrast, a state exercises 'general jurisdiction' over Defendants when the litigation is unrelated to Defendants' contacts with the forum state, but where Defendants have "continuous and systematic general business contacts" with the state. *Id.* (quoting *Helicopteros*, 466 U.S. 408, 414).

In specific jurisdiction cases, the Court must determine whether Defendants have "purposefully established 'minimum contacts' in the forum State." *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985)(quoting *International Shoe*, 326 U.S. at 316). These contacts must be such that personal jurisdiction would be just under the circumstances. *See id.* "Crucial to the minimum contacts analysis is showing that the defendant 'should reasonably anticipate being haled into court [in the forum State]' because the defendant has 'purposefully availed itself of

the privilege of conducting activities' there." *RAR*, 107 F.3d at 1277 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Unilateral activity on Plaintiff's part is not sufficient to support a finding of minimum contacts. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

If the Court finds that Defendants have established sufficient minimum contacts with the forum state, the Court then evaluates whether the exercise of jurisdiction comports with "fair play and substantial justice." *Purdue*, 338 F.3d at 781 (quoting *Burger King*, 471 U.S. at 476). In this analysis, the Court considers, *inter alia*,

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (quoting *Burger King*, 471 U.S. at 477).

### Discussion

Defendants ASDV and Lopez move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Plaintiff asserts, and Defendant ASDV does not contest, that ASDV is a Delaware corporation having its principal place of business in Washington, D.C. Similarly, Patriot alleges that Defendant Lopez is an out-of-state resident, his state of residence being California. A federal

10

court may acquire personal jurisdiction over non-resident defendants by asserting either general or specific jurisdiction.

## I. General Jurisdiction

General jurisdiction is proper if Defendants have regular, continuous, and systematic contacts with the forum state. *Helicopteros*, 466 U.S. at 414-16. Since Plaintiff failed to file a response in opposition to Defendants' motion, the Court is without any arguments that it may have made in its favor.

### A. *ASDV*

Plaintiff asserts that in accordance with an agreement that it entered into with ASDV, it loaned ASDV in excess of a million dollars. ASDV, Plaintiff contends, subsequently defaulted on the loan. Defendants challenge whether the Court has jurisdiction in this matter. Specifically, they argue that the Court lacks jurisdiction because Plaintiff failed to allege that ASDV has ever had any presence in Illinois nor has Plaintiff alleged that ASDV does any business in the state. The Court agrees. Aside from the notation on the Working Capital Note that the document was delivered in Joliet, Illinois, and that Plaintiff is an Illinois corporation, there are no facts brought to the Court's attention that link ASDV to Illinois. Based upon Plaintiff's contentions, the only contact that ASDV appears to have had with Illinois involves the delivery of a single contract into the state to an in-state corporation.

Consequently, the Court finds that Defendant ASDV lacks the "regular, continuous, and systematic" contacts with Illinois necessary for this Court to assert general jurisdiction.

**B. *Lopez***

Plaintiff alleges that, though Lopez made verbal assurances that Patriot would be appointed at least two positions on SDVB's Board of Directors, he failed to have any Patriot representatives appointed. Plaintiff further asserts that Lopez, while trying to defraud Plaintiff, failed to make pertinent disclosures. It is Plaintiff's contention that Lopez misrepresented to Patriot that he was actively pursuing additional contracts when indeed he was not. Lopez, in turn, argues that Plaintiff has failed to allege facts which would support the Court's exercise of personal jurisdiction over him. Again, the Court agrees. As with ASDV, the facts pled by Plaintiff that allegedly tie Lopez to Illinois are dearth and relate solely to Lopez's contractual agreements with Patriot. To be sure, Plaintiff alleges that Lopez entered into a management agreement, a working capital note, and made a single verbal assurance. In each instance, Patriot was the only other contracting party. This is hardly enough to be considered regular, continuous, or systematic. As Plaintiff's allegations fall short of establishing sufficient minimum contacts of Lopez with Illinois, the Court lacks grounds by which to assert

12

general jurisdiction over Lopez.

## II. Specific Jurisdiction

A court has specific jurisdiction over non-resident Defendants when the claim arises from or is related to the Defendants' contacts with the forum state. *RAR*, 107 F.3d at 1277.

### A. *ASDV*

Plaintiff asserts a breach of contract claim against Defendant ASDV. Because Plaintiff did not allege facts connecting the claims against ASDV to Illinois, Defendant argues that the Court should not exercise personal jurisdiction over it. The Court finds that Plaintiff failed to allege that ASDV has any connections with Illinois besides this single contractual arrangement with an Illinois corporation. The Seventh Circuit has held that, "an out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts." *RAR*, 107 F.3d at 1277 (citing *Burger King*, 471 U.S. at 478). "Rather, 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Id.* (citing *Burger King*, 471 U.S. at 479). However, in this case, Plaintiff failed to allege any facts regarding, *inter alia*, its negotiations with

13

ASDV nor the parties' prior course of dealing. Instead, the Court is left only with Plaintiff's assertion that it - an in-state party - entered into a contractual agreement with ASDV - an out-of-state party. This is precisely what the Seventh Circuit held fails to support a claim of sufficient minimum contacts. Therefore, there is no basis for the Court to find that ASDV had the requisite minimum contacts with Illinois that would allow the Court to assert personal jurisdiction over it. Because Plaintiff failed to establish a prima facie case of personal jurisdiction, the Court need not consider whether the exercise of jurisdiction over ASDV would comport with "fair play and substantial justice." *See Purdue*, 338 F.3d at 781 (quoting *Burger King*, 471 U.S. at 476).

## B. *Lopez*

Plaintiff alleges that Lopez entered into a contractual arrangement, in his capacity as Chairman of ASDV, and subsequently breached the contract. Additionally, Patriot asserts claims of fraud against Lopez. Because Lopez signed the contract containing a forum-selection clause, in his corporate capacity, he argues that the contract is unenforceable against him. Further, he maintains that since he made any misrepresentations, if at all, in his capacity as an officer of the corporation, he is protected under the "fiduciary-shield doctrine."

14

Generally, the Court will enforce a forum-selection clause unless it is found to be unreasonable. *Weidner Communications, Inc. v. H.R.H. Prince Bandar Al Faisal*, 859 F.2d 1302, 1309 (7th Cir. 1988). Absent "undue influence, or overweening bargaining power," a forum-selection clause is enforceable. *Id.* (citing *Bremen v. Zapata*, 407 U.S. 1, 12 (1972). "Obviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction." *Heller Financial, Inc., v. Midwhey Powder Co.*, 883 F.2d 1286, 1292 n.4 (1989). However, "[w]hen an officer signs a document and indicates next to his signature his corporate affiliation, then absent evidence of contrary intent in the document, the officer is not personally bound." *Sullivan v. Cox*, 78 F.3d 322, 326 (7th Cir. 1996)(quoting *Wottowa Ins. Agency, Inc. v. Bock*, 104 Ill.2d 311, 315-16 (Ill. 1984)). Patriot does not allege, nor does the contract indicate, that Lopez signed the agreement personally. Rather, Lopez signed the document in his representative capacity. Further, the contract fails to mention Lopez personally - it makes reference only to SDVB. Consequently, SDVB, and not Lopez, is bound.

However, an exception to this rule does exist in situations where the individual is but an alter ego of the corporation. *Kaeser & Blair, Inc. v. Willens*, 845 F.Supp. 1228, 1234 (N.D. Ill. 1993). In such situations, the Court may pierce the corporate veil and hold the individual personally liable. *See*

15

*id.* However, Patriot has failed to allege any facts whatsoever which would allow this Court to take such a course of action. As a result, the forum-selection clause is not applicable to Lopez individually, and the Court cannot assert personal jurisdiction over him based on that ground.

Further, the fiduciary-shield doctrine "prevents courts from asserting jurisdiction over a [non-resident] on the basis of acts taken by that person not on his own behalf, but on behalf of his employer." *Rollins v. Ellwood*, 141 Ill.2d 244, 253 (Ill. 1990). The fiduciary shield is an equitable doctrine; therefore, it is discretionary. *See Burnhope v. Nat'l Mortg. Equity Corp.*, 567 N.E.2d 356, 363-64 (Ill. App. Ct. 1990). In deciding whether to apply the doctrine to corporate officers and directors, courts often consider whether a defendant who is in a high-ranking position has decision-making authority and a personal financial interest. *Vasilj v. Duzich*, 2008 U.S. Dist. LEXIS 38745, No. 07 C 5462 (N.D. Ill. May 13, 2008). "The determinative factor is the individual's status as a shareholder, not merely as an officer or director." *Plastic Film Corp. of America, Inc. V. Unipac, Inc.*, 128 F.Supp.2d 1143 (N.D. Ill. 2001). While Patriot alleges that Lopez was an officer of the corporation, it failed to allege that he was a shareholder or that Lopez had any financial stake in the corporation. Nor did Plaintiff allege that Lopez acted for his

own benefit or gain. Indeed, Patriot alleges that Lopez and Defendant Truitt defrauded Patriot in an effort to "avoid making the payments contemplated" by the parties' agreements. (Am. Compl. 11). The Court finds Lopez to have acted on behalf of the corporation, rather than for his own personal benefit. Accordingly, the fiduciary-shield doctrine bars the exercise of jurisdiction over Lopez.

## Conclusion

For the reasons set forth above, the Court grants the motion of Defendants ASDV and Lopez to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Defendants' motion to dismiss for failure to state a claim upon which relief can be granted is denied as moot.

Date: October 3, 2008          E N T E R E D:

*Arlander Keys*
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT