THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRIOT RESOURCE PARTNERS II, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 06 C 5369 |
| | ) Magistrate Judge |
| | ) Arlander Keys |
| SERVICE DISABLED VETERANS BUSINESS ASSOCIATES, INC., ET AL | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patriot Resource Partners II, LLC (Patriot) entered into a Management Agreement with Defendant Service Disabled Veterans Business Association, Inc. (SDVB), whereby Patriot provided management consulting services to SDVB. Additionally, the parties executed a Promissory Note, resulting in the advancement, by Patriot, of $65,000 to SDVB. Though Patriot provided management services and advanced the loan proceeds, it alleges that SDVB failed to make the payments required by the agreements. Consequently, Patriot filed the underlying action alleging, *inter alia*, breach of contract, arising from the two agreements. Before the Court is Patriot's motion for partial summary judgment and SDVB's cross-motion for summary judgment. For the reasons set forth below, Plaintiff's motion for partial summary judgment is granted in part and denied in part. Defendant's cross-motion for summary judgment is

granted in part and denied in part.

**Factual Background**

Plaintiff contracts with various business entities to provide capital and business management services. On November 29, 2004, Patriot entered into a Management Agreement (Agreement) with SDVB, a non-profit organization that "provid[es] employment and business opportunities to veterans of the United States Armed Services and other Americans with disabilities." Pursuant to the Agreement, Patriot was to be paid a management fee in exchange for the services that it provided to SDVB. Specifically, the parties agreed that all sums due SDVB for services it provided would be deposited into a bank account controlled by Patriot. After paying certain costs, Patriot was entitled to 66% of the net pre-tax profit; the remaining 34% was to be distributed to SDVB. However, as a result of an oral agreement, the net profit distribution was subsequently changed such that both Patriot and SDVB were to receive 50% of the net pre-tax profit.

In addition to the Agreement, the parties executed a Promissory Note (Note) and, as a result, Patriot advanced SDVB loan proceeds in the amount of $50,000; the amount was later increased to $65,000. Though the loan amount subsequently changed, all other terms and conditions of the Note, including the September 29, 2006 maturity date, remained the same. Additionally, the parties agreed that the loan was subject to an

arrangement similar to that found in the Agreement – sums received by SDVB from its invoices were to be deposited into a bank account controlled by Patriot.

Under the Javits-Wagner-O'Day (JWOD) Program,[1] SDVB, prior to the Agreement's execution, was awarded the Central Facility Management contract at the Veterans Affairs Headquarters Building in Washington, D.C. In order to provide the required janitorial and other maintenance services, SDVB subcontracted with other business entities, specifically, Chimes and Consolidated Engineering Services, Inc. (CESI).[2] The contract, however, failed to yield revenue sufficient to sustain all of SDVB's financial obligations.[3] Consequently, representatives from Patriot (Dan Kennison and Jim Garvey) and SDVB (William Truitt) undertook to renegotiate both subcontractor contracts. The subsequent negotiations resulted in termination of the Chimes contract; Chimes' employees that previously performed the janitorial work at the Veterans Affairs building were hired by

---

[1] The JWOD Program is a program by which "the Federal Government obtains certain needed products and services from nonprofit agencies employing people who are legally blind or have other severe disabilities."

[2] CESI is the only organization involved that employs service disabled veterans.

[3] Indeed, SDVB was removed from its office as a result of non-payment of rent. Similarly, the salaries of at least two of its employees, William Truitt and Suchada Subgranon, were unable to be paid.

3

SDVB. Further, SDVB's contract with CESI was renegotiated to provide that SDVB would receive 33% of CESI's monthly net profit, instead of the 5% previously negotiated. The changes made to the two contracts resulted in revenue sufficient to meet and exceed SDVB's financial obligations.

With the new revenue stream, SDVB paid Patriot approximately $105,000, pursuant to the parties' lockbox arrangement. However, feeling that the funds were being "mismanaged," Mr. Truitt later terminated the arrangement and no further payments were made to Patriot. Consequently, the Agreement was allegedly violated and the Note went into default.[4] On September 21, 2006, SDVB's representative was told that there were not sufficient funds available for payroll, as any sums received would be applied to the Note.

## Standard of Review

Summary judgment is proper if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists if the "evidence is such that a reasonable

---

[4] Defendant was notified of the default by correspondence dated September 20, 2006.

4

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Though this standard places the initial burden on the moving party, once it has met this burden of production, the nonmoving party "may not rely merely on allegations or denials in its own pleading" but instead must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). When deciding whether summary judgment is proper, the Court must accept the nonmoving party's evidence as true and draw all inferences in favor of that party. *See Anderson*, 477 U.S. at 255. The Court will disregard all facts not properly supported by the record. *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

**Discussion**

Patriot moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56, on the issue of liability arising from SDVB's alleged breach of the Agreement and Note. Additionally, Patriot seeks an accounting of SDVB's past and future net profits. SDVB moves for summary judgment on Count I of the Amended Complaint in its entirety.

I. **Plaintiff's Motion for Partial Summary Judgment**

    A. **Breach of the Agreement**

Plaintiff contends that, though it provided valuable management services to SDVB, SDVB failed to make the payments

5

required by the Agreement. Consequently, Patriot alleges that SDVB breached the contract.

In Illinois, "the elements of a breach of contract cause of action are '(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages.'" *Ass'n Ben. Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007)(citations omitted). Though Defendant initially paid Plaintiff pursuant to the parties' Agreement, it terminated the lockbox arrangement, effective September 18, 2006. From that day forward, Plaintiff alleges, SDVB received payments for work performed pursuant to the Veteran's Affairs contract, but failed to remit any sums to Patriot. Indeed, Defendant does not contest this. Defendant does, however, challenge Plaintiff's ability to prove damages.

In an effort to show damages, Plaintiff submitted copies of invoices provided by Defendant during discovery.[5] Plaintiff contends that these invoices demonstrate the existence of a profit – damages to which it is entitled. Defendant responds by arguing that the profit that it sustained was "small," that

---

[5] The invoices provided to the Court include those submitted by SDVB to the General Services Administration, for payment of the Veteran's Affairs contract; those submitted to SDVB by CESI for services provided in connection with the contract; invoices submitted to SDVB by EMCOR Government Services, Inc., for services provided relative to the contract; and invoices from Paychex for SDVB's payroll and other expenses.

Plaintiff improperly submitted the invoices, as they are not properly admissible at trial under the Federal Rules of Evidence, and that Plaintiff's calculations fail to take into account SDVB's other expenses. The Court disagrees.

As a general matter, if the party opposing summary judgment fails to sufficiently show an essential element of its case, on which it bears the burden of proof, there exists no genuine issue of material fact, as "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. In that instance, summary judgment must be granted. *Id.* at 322. This principle applies with equal force to the element of damages, as it does to any other element of a claim. *See A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 1001 (7th Cir. 1992)(holding that summary judgment was proper as appellant failed to show any damages). Initially, the Court notes that the *amount* of damages is an issue properly resolved at trial. Consequently, how large or small the amount of profit is not dispositive on a summary judgment motion. That there was, indeed, a profit is, instead, the controlling determination – a determination satisfied by the admission of William Truitt. To be sure, Mr. Truitt admitted in his Supplemental Declaration that in 2007, there was "a small profit of $21,199.98." As Plaintiff has proven the existence of damages, the Court will not deny

7

Plaintiff's motion for partial summary judgment on that ground.

Nor is the Court convinced by Defendant's arguments that the invoices that it supplied to Plaintiff during discovery are inadmissible at trial, and thus not properly considered on a summary judgment motion, as they have not been authenticated. The Seventh Circuit has held that "[a]uthentication relates only to whether the documents originated from [its alleged source]; it is not synonymous to vouching for the accuracy of the information contained in those records." *United States v. Brown*, 688 F.2d 1112, 1116 (7th Cir. 1982). Because Defendant itself provided the invoices, the Court finds disingenuous its assertion that they must now be authenticated. While it is generally true that documents submitted in support of a motion for summary judgment must be authenticated, *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001), courts have held that "[d]ocuments produced by an opponent during discovery may be treated as authentic." *Fenje v. Feld*, 301 F. Supp. 2d 781, 809 (citations omitted). Here, Defendant supplied Plaintiff with copies of the invoices. Because the Court finds no reason to doubt the origination of the invoices, SDVB cannot now assert that they have not properly been authenticated.

Finally, Defendant failed to persuade the Court with its arguments that in performing its calculations, Patriot failed to take SDVB's other expenses into account. As discussed earlier,

Mr. Truitt admitted that SDVB indeed realized a profit in 2007. The exact amount of damages is an issue properly decided by a jury, not by the Court on a motion for summary judgment.

As the Court finds that Defendant violated the Agreement, Plaintiff's motion for partial summary judgment on this issue is granted, and Plaintiff is entitled to 50% of the net pre-tax profit, as provided for in the Agreement

### B. Salaries of William Truitt and Suchada Subgranon

Plaintiff argues that provisions of the Federal Acquisition Regulations (FAR) prohibit the deduction of the salaries of William Truitt and Suchada Subgranon as expenses, prior to the calculation of the parties' profit. Indeed, Plaintiff contends that the salaries are properly deducted only after the parties have received their respective shares of the pre-tax profit. Patriot contends that to do otherwise would violate 48 CFR 31.205-6(a)(6)(i).

> The provision of the FAR cited by Plaintiff provides that,
>
> (6)(i) Compensation costs for certain individuals give rise to the need for special consideration. Such individuals include:
> (A) Owners of closely held corporations, members of limited liability companies, partners, sole proprietors, or members of their immediate families . . .
> (ii) For these individuals, compensation must –
> (A) Be reasonable for the personal services rendered; and
> (B) Not be a distribution of profits (which is not an allowable contract cost)

48 CFR 31.205-6(a)(6).

Plaintiff's reliance on the provision, however, is misplaced. To be sure, subpart 31.2 and the subparts that it encompasses, apply to government contracts with *commercial organizations*. 48 CFR 31.103(a)("The cost principles and procedures in subpart 31.2 . . . shall be used in pricing negotiated supply, service, experimental, developmental, and research contracts and contract modifications with commercial organizations.") In the case at bar, however, it is uncontroverted that SDVB is a *nonprofit organization*. Consequently, subpart 31.108 is instructive. It provides that, "[s]ubpart 31.7 provides principles and standards for determining costs applicable to contracts with nonprofit organizations other than educational institutions, State and local governments, and those nonprofit organizations exempted under OMB Circular No. A-122." 48 CFR 31.108. As the parties have failed to plead that SDVB is one of the exempted entities provided by the statute, the Court finds, though not argued by either party, that subpart 31.7 is, indeed, the governing provision.

The applicable subpart of 31.7, specifically, 31.702, states that, "Office of Management and Budget (OMB) Circular No. A-122, Cost Principles for Nonprofit Organizations, sets forth principles for determining the costs applicable to work

performed by nonprofit organizations under contracts (also applies to grants and other agreements) with the Government." 48 CFR 31.702. A review of OMB Circular No. A-122 reveals the absence of the compensation restriction that is found in the provision governing commercial organizations. Instead, the circular states that, in determining allowable compensation to "members of non-profit organizations, trustees, directors, associates, officers, or the immediate families thereof" a determination should be made that the "compensation is reasonable for the actual personal services rendered rather than a distribution of earnings in excess of costs." 63 Fed. Reg. 29809 (June 1, 1998). In the instant case, Plaintiff does not allege that the salaries of Mr. Truitt and Ms. Subgranon are unreasonable, nor does it contend that they are distributions exceeding SDVB's costs. Consequently, the Court finds that Plaintiff failed to allege facts sufficient to demonstrate that the deduction of the salaries as expenses, prior to calculating the parties' profit is violative of the applicable statute.

Additionally, the Court cannot say that the salaries should be deducted only after SDVB's revenue is split with Patriot. Indeed, the Agreement provides for distribution between the parties of *net* (after deduction of expenses, including Administrative costs) pre-tax profit. Because a reasonable jury could find that the contract requires that the salaries be

11

deducted prior to the split - a finding in favor of Defendant, the nonmoving party - it would be improper for the Court to grant summary judgment. Therefore, the Court declines to grant summary judgment on this issue.

### C. Accounting

Plaintiff also seeks an accounting of Defendant's past and future profits. It argues that it is entitled to an accounting because a "precise calculation [of net profit] cannot be identified from the business records provided in discovery."

In order to state a claim for an accounting under Illinois law, "plaintiff must allege the absence of an adequate remedy at law and either a breach of a fiduciary relationship, a need for discovery, fraud, or the existence of mutual accounts which are of a complex nature." *3Com Corp. v. Electronic Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 941 (N.D. Ill. 2000)(citations omitted). Indeed, "the lack of an adequate legal remedy is the essential prerequisite to an accounting claim." *Id.* at 941. In the case at bar, Patriot has pled a viable breach of contract claim. Because Plaintiff has an adequate remedy at law, it cannot resort to the equitable remedy of an accounting. Plaintiff's request for an accounting is, therefore, denied.

### D. Breach of the Promissory Note

Plaintiff alleges that Defendant failed to make any

payments on the $65,000 Note. Because of the default, Plaintiff alleges breach of contract.

The relevant part of Section 3-304 of the Illinois Uniform Commercial Code provides, "[i]f the principal [on an instrument payable at a definite time] is not payable in installments and the due date has not been accelerated, the instrument becomes overdue on the day after the due date."  810 ILL. COMP. STAT 5/3-304 (2009). Defendant argues that it satisfied its loan obligations prior to the September 29, 2006 maturity date. Indeed, it contends that it has made payments in excess of those required under the Note. Conversely, Plaintiff contends that the $105,000 remitted by Defendant was properly applied to Defendant's obligations under the Agreement. Because the Agreement was not fully satisfied, Plaintiff argues, no sums have been applied to the Note.

Initially, the Court notes that pursuant to Plaintiff's arguments, both the sums owing on the Agreement and the Note were to be deposited in a bank account controlled by Patriot. However, Plaintiff has failed to provide the Court with any documentation detailing the manner in which the sums received were to be applied to each contract. Defendant avers that it was initially told "the monies received would be applied as payment on the Promissory note." Nevertheless, the Court finds that the $65,000 has not been paid. To be sure, there is no

doubt that "where a debtor owes money to a creditor under more than one account or note, and the debtor does not specify the account or note to which a payment should apply, then the creditor has the right to apply the payment to the note or account of its choice." *Index Futures Group v. Schmidt*, No. 92 C 4353, 1997 U.S. Dist. LEXIS 2560, at *19 (N.D. Ill. Mar. 5, 1997)(citing *Farm Credit Bank of St. Louis v. Biethman*, 262 Ill. App. 3d 614, 634 N.E.2d 1312, 1316, 199 Ill. Dec. 958 (5th Dist. 1994). Here, it is undisputed that SDVB had two accounts with Patriot – the Agreement and the Note. As SDVB failed to indicate to which account the payments of $105,000 should have been applied, Patriot is entitled to decide, as it has done, that the payments be applied to the Agreement. Accordingly, the Court grants summary judgment, in favor of Plaintiff, on this issue.

## II. Defendant's Motion for Summary Judgment[6]

### A. Profit Split

Defendant argues that the Agreement is void, as the profit-split provision is violative of public policy. To be sure, SDVB asserts that the arrangement violates a requirement of the JWOD Program. Consequently, SDVB maintains, the Agreement is

---

[6] Defendant also seeks summary judgment on the issue of whether the Promissory Note has been paid in full. As it was discussed and decided earlier in the Court's Opinion, it will not be presented again here.

14

unenforceable.

The JWOD Program, now know as the AbilityOne Program, assists "thousands of people who are blind or have other severe disabilities find employment. The program coordinates its activities with nonprofit organizations across the country to employ these individuals and provide goods and services to the federal government at a fair price." A Brief Description of the AbilityOne Program, http://www.abilityone.gov/about_us.html (last visited June 15, 2009). In order to qualify for participation in the JWOD Program, a nonprofit organization must submit documentation containing a statement that, "no part of the net income of the nonprofit agency may inure to the benefit of any shareholder or other individual." 41 CFR 51-4.2. Defendant maintains that this provision prohibits the profit-split arrangement as the resulting profit inures to the benefit of Dan Kennison and Jim Garvey. The Court disagrees.

To satisfy the requirements of the JWOD Program, SDVB submitted for approval, its Articles of Incorporation, which stated,

> No part of the net earnings of the corporation shall inure to the benefit of, or be distributed to, its members, directors, officers or other private persons except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article 3 hereof.

And though the Articles contained language in addition to

15

that required by the statute, language explicitly stating that SDVB retained the power to pay, from net profits, reasonable compensation, SDVB was subsequently approved as an authorized nonprofit agency. Neither party has directed the Court's attention to any case law standing for the proposition that the profit split is permitted or prohibited under the JWOD Program. Indeed, there is none. Because the profit split was made in response to services that Patriot provided, and specifically allowed under Defendant's Articles of Incorporation, which the JWOD administrators approved, the Court declines to find that the profit split arrangement violates the statute.[7]

---

[7] The Court notes that the statute provides a mechanism for addressing violations by nonprofit agencies. In this regard, the statute provides,

> (a) Any alleged violations of . . . regulations by a nonprofit agency shall be investigated by the Committee which shall notify the nonprofit agency concerned and afford it an opportunity to submit a statement of facts and evidence . . .
> (b) If a nonprofit agency fails to correct its violations of these regulations, the Committee, after affording the nonprofit agency an opportunity to address the Committee on the matter, may terminate the nonprofit agency's eligibility to participate in the JWOD Program.

41 CFR 51-4.5.

## B. Specific Performance of Management Agreement[8]

Defendant argues that Plaintiff's prayer for specific performance of the Agreement should be denied.

Generally, "a plaintiff cannot seek performance based on a breach of a personal services contract." *St. Charles Riverfront Station v. Empress Casino Joliet Corp.*, 5 F. Supp. 2d 592, 593 (N.D. Ill. 1998). The Agreement is, in essence, an employment contract whereby Patriot provides services in exchange for payment by SDVB. Defendant argues that the parties "do not share a relationship of trust and cooperation that would be required to fulfill the terms of the Management Agreement." The Court agrees. Because requiring the parties to continue to operate under the Agreement would require SDVB to retain an employee in its service that it prefers not to, the Court grants summary judgment on the issue of specific performance of the Agreement.

---

[8] Plaintiff maintains that it seeks specific performance of the Agreement, requiring the appointment of "at least two representatives of Plaintiff to the managing board of Defendant SDVB." However, such relief is not requested in Count I; Plaintiff, instead seeks this relief in Count III of its Amended Complaint. Additionally, Count III of the Amended Complaint was dismissed on February 28, 2007. Consequently, this argument is not properly before the Court on Plaintiff's motion for partial summary judgment of Count I and will not be discussed.

## Conclusion

For the reasons set forth above, Plaintiff's motion for partial summary judgment is granted in part and denied in part. Similarly, Defendant's cross-motion for summary judgment is granted in part and denied in part.

Date: June 23, 2009     E N T E R E D:

_[signature]_
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT